UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Calvin Jerome Ellis,

                            Plaintiff,

          v.

Commissioner of Social Security,

                         Defendant.

**Decision and Order**

19-CV-78 HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 8, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 13,

14.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that he was not entitled to Disability Insurance Benefits under Title II, or

Supplemental Security Income under Title XVI, of the Social Security Act.  The Court has deemed

the motions submitted on papers under Rule 78(b).

## II.    DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

      The substantial evidence standard applies to both findings on basic evidentiary facts, and to

inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637

(E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing a

Commissioner's decision, the court must determine whether "the record, read as a whole, yields

such evidence as would allow a reasonable mind to accept the conclusions reached" by the

Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14,

2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts

from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d

606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial

evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard

means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to*

*conclude otherwise.*"  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and

citations omitted).

      For purposes of Social Security disability insurance benefits, a person is disabled when

unable "to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) &

1382c(a)(3)(A).

      Such a disability will be found to exist only if an individual's "physical or mental impairment

or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).

The ALJ must then determine the individual's ability to return to past relevant work given the RFC.

*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges how the ALJ adjudicated his symptoms of asthma.  The ALJ found that

plaintiff had the severe impairments of left knee osteoarthritis, obesity, and asthma.  [16.]  After

determining that plaintiff did not satisfy any medical listings, the ALJ settled on an RFC of light

work with restrictions including avoidance of "concentrated exposure to dust, odors, fumes and

other pulmonary irritants."  [21.]  Plaintiff objects that the ALJ, without justification, narrowed the

limitation on dust exposure to a "concentrated" exposure:

> In the instant claim, Mr. Ellis suffered from asthma throughout the entire
> time in question (Tr. 12).  Dr. Antonia Redhead consistently diagnosed Mr. Ellis with
> intermittent asthma and prescribed him Ventolin (Tr. 509, 519-520, 514-515, 534-
> 524, 536-538, 545-546,  549-550, 554-555, 565-569, and 571-573). Consultative
> examiner, Dr. Hongbiao Liu, diagnosed Mr. Ellis with a history of asthma (Tr. 352).
> Dr. Liu opined: "The claimant should avoid dust and other irritating factors or limit
> asthma attacks." (Tr. 353).  The ALJ afforded Dr. Liu's opinion "significant weight"
> (Tr. 21).
>
> The ALJ then limited Mr. Ellis, noting he must avoid concentrated exposure
> to dust, odors, fumes and other pulmonary irritants (Tr. 17).  Yet the ALJ does not
> explain why she only limited Mr. Ellis from "concentrated" exposure as opposed to
> all exposure as opined by Dr. Liu. This limitation is not based on substantial
> evidence.  There is no medical opinion in the record limiting Mr. Ellis to just
> concentrated exposure.  This case is on point with [*Demler v. Berryhill*, No. 14-CV-
> 424, 2017 WL 1176050 (W.D.N.Y. Mar. 30, 2017)] and [*Riley-Tull v. Berryhill*, No. 16-
> CV-151-FPG, 2017 WL 2821559 (W.D.N.Y. June 30, 2017)].  As such this claim
> should be remanded for proper consideration of Mr. Ellis's asthma.

(Dkt. No. 13-1 at 10; *see also* Dkt. No. 15 at 2.)  The Commissioner responds that the ALJ acted

reasonably given the stability of plaintiff's asthma:

> Here, the ALJ reasonably found that plaintiff was restricted from
> concentrated exposure, rather than all exposure, in part due to plaintiff's statements
> to Dr. Liu which indicated that his asthma was stable.  For instance, plaintiff
> reported that he had an asthma attack only once per year, had no emergency room
> visits for asthma, and the last time he used an inhaler was two years prior (Tr. 349).

On examination, plaintiff's lungs were clear to auscultation, with no evidence of wheezes or rhonchi (Tr. 351). Likewise, when examined by Dr. Miller one year earlier, plaintiff reported that he had asthma for years, and denied hospitalizations or emergency room treatment for the condition (Tr. 47). Dr. Miller's examination of plaintiff's chest was unremarkable (Tr. 49).

Plaintiff's treatment records also indicate that his asthma was stable (Tr. 565, 571). The very treatment notes that plaintiff cites in support of his allegation that he had asthma, revealed that his lungs were clear to auscultation, with no breathing difficulties or respiratory distress (Tr. 511, 515, 520, 525, 538, 546, 550, 555, 567, 573). Moreover, the evidence in the record reveals that despite his long-standing asthma, plaintiff was able to engage in robust activities, such as going to the gym for five hours (Tr. 576), and riding a bicycle (Tr. 448). In short, based on the findings of Dr. Liu and plaintiff's own practitioners, as well as plaintiff's activities of daily living, the ALJ reasonably concluded that plaintiff was precluded from concentrated exposure to irritants, but not all exposure.

Although plaintiff has also faulted the ALJ for not obtaining a medical opinion from plaintiff's treating sources regarding the impact of his asthma, the ALJ was not required to do so because the evidence he had was sufficient for him to make a determination regarding the impact of this condition. *Rachelle G. v. Comm'r of Soc. Sec.*, 2019 WL 162018, at *9 (N.D.N.Y. 2019) (finding that the ALJ did not err in failing to recontact plaintiff's treating sources for statements or further information, and agreeing with the Commissioner that the record was adequate for the ALJ to reach a reasoned conclusion without a need to obtain a medical statement from the claimant's providers); *see also Kunkel v. Comm'r of Soc. Sec.*, 2013 WL 4495008, at *16 (W.D.N.Y. 2013) (rejecting the idea that remand was required where the ALJ did not request an RFC assessment from a treating physician, noting that the relevant inquiry was whether, in the absence of the assessment, the record was sufficient to support the ALJ's RFC determination).

It also bears noting that even if the ALJ had found that plaintiff was restricted from "all" exposure to irritants, instead of "concentrated" exposure, plaintiff would still not be disabled because none of the jobs identified by the VE required any exposure to irritants. *See* Dictionary of Occupational Titles (DOT) 208.685-010, 1991 WL 671753 (for collator operator position, exposure to weather wetness/humidity, atmospheric conditions, toxic caustic chemicals is not present); DOT 209.587-034, 1991 WL 671802 (same for marker position); DOT 211.467-030, 1991 WL 671853 (same for ticket seller).

(Dkt. No. 14-1 at 24–25.)

The Commissioner has the better argument. "If all of the evidence we receive, including all

medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are

disabled, we will make our determination or decision based on that evidence." 20 C.F.R. § 404.1520b(a); *see also* 20 C.F.R. § 416.920b(a) (same). "We will assess your residual functional capacity based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 416.945(a)(3) (same). Here, plaintiff never smoked. [299.] *Cf. Demler v. Berryhill*, No. 14-CV-424, 2017 WL 1176050, at *4 (W.D.N.Y. Mar. 30, 2017) (smoking and shortness of breath led a nurse practitioner to recommend that the plaintiff "avoid all exposure to extreme heat, high humidity, cigarette smoke, fumes, odors, and gases, dust, and chemicals"). Plaintiff reported to the consultative medical examiner that dust and smoking made his asthma worse but that he had asthma attacks only once a year and last used an inhaler two years earlier. [353.] During primary care visits in 2015, plaintiff reported only intermittent asthma. [*E.g.*, 365.] A skilled care assessment in 2015 prescribed an inhaler but did not include any diagnostic codes related to asthma. [434–35.] Primary care visits in 2014 and 2015 identified 14 active medical problems; asthma was not one of them. [500, 509.] A primary care visit in June 2015 did identify intermittent asthma and did lead to a renewal of an inhaler prescription [513], but asthma still was not identified as an active medical problem. [514; *see also* 523.] These records and others cited by the Commissioner indicate that plaintiff consistently reported intermittent asthma and was interested in maintaining an inhaler but that acute asthma problems were uncommon. *Cf. Caruso v. Saul*, No. 3:18 CV 1913 (RMS), 2019 WL 5853527, at *10 (D. Conn. Nov. 8, 2019) (case remanded for other reasons but not because of asthma; "[n]othing in the record supports a conclusion that additional limitations should have been imposed due to the plaintiff's asthma. The records reflect that the plaintiff's asthma was 'mild' and controllable through medication."); *Ewing v. Astrue*, No. 5:11-CV-01418, 2013 WL 1213129, at *9 (N.D.N.Y. Mar. 22, 2013) (Commissioner affirmed where plaintiff's history of asthma did not show significant treatment). Under these circumstances, no interpretation of the medical records was

6

necessary, and the ALJ had discretion to craft an RFC that would protect plaintiff from acute

asthma attacks without going as far as a categorical elimination of all levels of potential irritants.

Next, plaintiff challenges how the ALJ addressed his use of a cane.  The ALJ's RFC of light

work included the exertional limitations that plaintiff "can occasionally climb ramps and stairs; never

climb ladders, ropes and scaffolds; [and] occasionally stoop, kneel, crouch and crawl." [21.]  Plaintiff

argues that the exertional limitations do not go far enough to address his need for a cane:

> In the instant claim, there is no question Mr. Ellis was prescribed a cane.  At
> issue is whether the ALJ's RFC properly accounted for the use of cane.  The ALJ did
> not include any limitation in her RFC for the use of a cane (Tr. 17).  As such it
> appears that the ALJ erred by not considering this.  However the ALJ did ask the VE
> if the jobs he identified would remain good if the hypothetical individual required
> occasional use of a cane (Tr. 95).  The VE testified in the affirmative (Tr. 95).  Thus
> it appears that there was no error.
>
> However the ALJ's determination that Mr. Ellis would only "occasionally"
> require the use of a cane is not based on substantial evidence.  While in March of
> 2015, Mr. Ellis had not yet used his cane (Tr. 241), by April of 2017, he testified he
> used his cane ten days of the month when he had to "go out and walking on my
> own" (Tr. 72).  This limited use of a cane does appear to be occasional.  However
> Mr. Ellis's lifestyle was rather sedentary.  He testified that he didn't do much.  In fact
> he testified he did not go to church, did not socialize with friends or family, did not
> attend parent teacher conferences, did not attend school events, and he did not go
> out to eat (Tr. 74-75).  The only walking he did was a short 15 minute walk to the
> store each day (Tr. 77).  In stark contrast to Mr. Ellis's daily routine, the ALJ's RFC
> limited Mr. Ellis to light work (Tr. 17).  Light work by definition requires a good deal
> of walking and standing.  *See* 20 C.F.R. §§ 404.1567(b) and 416.967(b).  It follows
> that if Mr. Ellis were required to perform a light job, he would need to use his cane
> substantially more, most likely he would need it on a daily basis.  As such the ALJ's
> hypothetical question to the VE whether the occasional use of a cane would affect
> the jobs he identified is not reflective of Mr. Ellis.

(Dkt. No. 13-1 at 12.)  The Commissioner counters that the consultative examiner did not see

plaintiff use a cane during the examination.  (Dkt. No. 14-1 at 20.)  The Commissioner also notes

that plaintiff did not appear to need a cane regularly for numerous daily or weekly activities:

> The ALJ also considered plaintiff's examination findings, including from Dr.
> Redhead, which revealed that he had a normal gait and station, unimpaired sensation,
> and normal reflexes (Tr. 19-20; *see* Tr. 367, 372, 377).  He had good range of motion

of his left knee and no instability (Tr. 541).  While plaintiff complained of knee pain, his examination findings usually revealed only "mild tenderness" in his knee (Tr. 367, 372, 377).  Plaintiff's treatment notes, thus, do not support his allegation that he could not do light work or that he required a cane.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes to formulate the RFC assessment); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, relying instead on the relevant medical findings in the treatment notes).

The ALJ also considered plaintiff's activities and found that they supported a finding of light work (Tr. 19-20).  Plaintiff used public transportation (Tr. 67), performed personal care tasks (Tr. 73), prepared simple food (Tr. 73), did laundry (Tr. 73), swept floors (Tr. 73), washed dishes (Tr. 73), and shopped for groceries (Tr. 73-74).  Despite his left-knee pain, plaintiff reported that he was exercising by walking and riding a bicycle (Tr. 448, 471).  He worked out at a gym for five hours one day (Tr. 576).  He also reported that he was working during part of the relevant period (Tr. 562) and described his work as manual work (Tr. 447).  Plaintiff's robust daily activities support an RFC finding of light work.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013) (holding that the ALJ properly considered the claimant's reported daily activities, even in support of an RFC finding for light work); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (the claimant's varied activities, including occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer, indicated that the claimant's allegations of disabling limitations were not fully credible, and even supported an RFC finding for light work).  Moreover, some of plaintiff's activities, such as working out at the gym for five hours, riding a bike, and doing manual work, also indicate that he was not dependent on his cane.

Plaintiff's statements regarding the use of a cane also provide support for the ALJ's RFC finding (Tr. 18, 21).  Plaintiff stated in March 2015 that he had a cane, but he did not use it (Tr. 241).  Similarly, at the April 26, 2017 hearing, plaintiff reported having been prescribed a cane, but did not use it all the time (Tr. 72).  In fact, he did not have it with him for travel to and from the hearing (Tr. 72).  Plaintiff's statements undermine his allegations regarding his need for a cane.  *See Salmini v. Comm'r of Social Security*, 371 Fed. App'x 109, 112-13 (2d Cir. 2010) (citing plaintiff's testimony as substantial evidence supporting ALJ's findings); *Juarez v. Comm'r of Social Security*, No. 06 Civ. 2868, 2009 WL 874041, at *9 (S.D.N.Y. Mar. 26, 2009) (plaintiff's testimony can constitute substantial evidence supporting ALJ's findings).

(*Id.* at 21–22.)

The Commissioner has the better argument for this issue. "A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding that need. Plaintiff has the burden to establish such medical necessity." *Shepard v. Comm'r*, No. 5:16-CV-1347 (ATB), 2017 WL 5508377, at *11 (N.D.N.Y. Nov. 15, 2017) (citations omitted). Consultative examiner Hongbiao Liu, M.D. examined plaintiff on April 13, 2015 and made no mention of a cane; in fact, Dr. Liu stated explicitly that plaintiff "[u]ses no assistive devices." [355.] *Cf. Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018) ("In addition, the opinion of the consultative examiner specifically determined that plaintiff's use of a cane was 'medically necessary.'"). Dr. Liu noted that plaintiff walked with a limp and had back and leg pain but that plaintiff needed no help getting on and off the exam table and could rise from a chair without difficulty. [355.] Plaintiff was in fact prescribed a cane as well as a knee brace [*e.g.*, 366, 377], but the clinical notes otherwise make no mention of these devices or include them in treatment plans. *Cf. Batt v. Comm'r*, No. 1:18-CV-92-DB, 2019 WL 2375055, at *6 (W.D.N.Y. June 5, 2019) ("Although some of the medical records indicate that Plaintiff used a cane to ambulate on some occasions, the medical record overall contains more assessments from physicians who observed Plaintiff walking normally, without any cane or assistance."). Plaintiff's home care assessment of July 6, 2015 includes a note that plaintiff walked frequently and could make major and frequent changes in his body position without assistance. [393.] The assessment further includes a note that plaintiff could move in bed and in a chair independently and had enough strength to lift himself up completely. [393.] Plaintiff also was assessed at no risk for falling and could groom himself without assistance. [396.] Under a question in the assessment titled "ambulation/locomotion," the home care assessment includes the following comment: "Able to independently walk on even and uneven surfaces and negotiate stairs with or

without railings (specifically: needs no human assistance or assistive device)." [396.] *Cf. Klosin v.*

*Colvin*, No. 12-CV-1092S, 2014 WL 2945772, at *3 (W.D.N.Y. June 30, 2014) ("The cited records,

however, do not establish a consistent use of or need for either an ankle brace or a cane.").  From

these clinical notes plus the ones that the Commissioner has cited, the ALJ had discretion to craft an

RFC that accounted for plaintiff's back and knee pain but that did not have to account for assistive

devices.

Plaintiff then challenges the Commissioner's final determination that his depression was not

a severe impairment.  "In the instant claim Mr. Ellis suffered from depression.  Dr. Redhead

diagnosed depression over the course of her treatment (Tr. 536-539, 544-545, 548-551, 553-554,

560-561, 565-566, and 571-572).  In 2015 and 2016, Mr. Ellis treated at Horizons for depression (Tr.

307-343, 445-494).  In 2017, Mr. Ellis treated at Lake Shore for depression (Tr. 584-611).  He took

Cymbalta for depression (Tr. 278, 339, 381, 430, 461, 514).  With a diagnosis from Dr.

Redhead, a treating physician, and treatment with consistent counseling and medication, the

ALJ should have considered depression to be a severe impairment." (Dkt. No. 13-1 at 13.)  The

Commissioner responds that functional limitations from depression matter more than the diagnosis

in itself:

> In support of his finding that plaintiff did not have a severe mental
> impairment, the ALJ appropriately gave significant weight to the opinion of Dr.
> Santarpia, who performed a comprehensive mental examination and did provide an
> opinion (Tr. 15; *see* Tr. 347).  Pl. Br. 13.  Dr. Santarpia opined that plaintiff could
> follow and understand simple directions and instructions, perform simple tasks
> independently, maintain attention and concentration, maintain a regular schedule,
> learn new tasks, perform complex tasks, make appropriate decisions, relate
> adequately with others, and appropriately deal with stress (Tr. 346).  Notably, the
> opinion of a consultative examiner, like Dr. Santarpia, may serve as substantial
> evidence in support of an ALJ decision.  *See Petrie v. Astrue*, 412 F. App'x 401, 405
> (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).
>
> In support of his finding that plaintiff did not have a severe mental
> impairment, the ALJ also gave significant weight to the opinion of Dr. Lieber-Diaz

that plaintiff did not have a severe mental impairment (Tr. 15; *see* Tr. 104). Specifically, Dr. Liber-Diaz assessed that plaintiff had no restriction in activities of daily living; mild difficulties maintaining social functioning; mild difficulties maintaining concentration; persistence or pace, and no history of episodes of decompensation, each of extended duration (Tr. 104). *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the regulations permit the opinions of nonexamining sources to override the opinions of treating sources provided they are supported by the evidence in the record (internal citations omitted)); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

(Dkt. No. 14-1 at 16.)

The Commissioner has the better argument.  At his first assessment with horizon on January 30, 2015, plaintiff reported symptoms of depression and a significant history for abuse as a child, interactions with the legal system, and substance abuse. [311–21.]  Horizon nonetheless concluded that plaintiff would benefit from counseling and noted that he was cooperative and engaged in the assessment. [322–23.]  A psychiatric examination by Horizon on February 11, 2015 showed that plaintiff was well groomed; had appropriate behavior and affect; and presented an anxious mood while also showing normal speech and perceptions and fair judgment.  [339.]  Horizon's assessments were consistent with the consultative psychiatric evaluation of Susan Santarpia, Ph.D. on April 13, 2015.  Dr. Santarpia noted symptoms of depression but found that plaintiff had good appearance, speech, thought processes, and affect.  [349.]  Dr. Santarpia found that plaintiff could take care of his own activities of daily living and was able to follow and understand simple directions and instructions.  [350.]  Plaintiff also is able to perform simple and complex tasks independently; learn new tasks; maintain attention and concentration; maintain a regular schedule; relate adequately with others; make appropriate decisions; and appropriately deal with stress within normal limits.  [350.] *Cf. Brito v. Colvin*, No. 13-CV-6501P, 2015 WL 1470555, at *25 (W.D.N.Y. Mar. 31, 2015) ("While recognizing that Brito suffered from depression, [his primary therapist] assessed few limitations in

11

mental work-related activities, and none were marked or extreme.  Those that she did assess were primarily mild, with two moderate limitations noted.  [The therapist] opined that despite his mental impairments, Brito was able to interact with others and perform simple and complex tasks in a routine work setting.  Similarly, [the state examiner] assessed that Brito suffered from alcohol dependence and depressive disorder, but could follow and understand simple directions and perform simple and complex tasks while interacting adequately with others, maintaining concentration and a regular schedule.").  These clinical notes and the ones that the Commissioner has cited gave the ALJ discretion to conclude that plaintiff's depression, though present, did not rise to the level of a severe impairment.  *Cf. Pepper v. Comm'r*, No. 7:13-CV-978 GLS, 2015 WL 3795879, at *3 (N.D.N.Y. June 17, 2015) (Commissioner affirmed where plaintiff was capable of performing simple and some complex tasks).

Finally, plaintiff argues, somewhat as an alternative to his third point, that the ALJ did not craft an RFC that accounted for his depression even if his depression did not rise to the level of a severe impairment.  "The ALJ did not account for Mr. Ellis's non-severe impairments in assessing his RFC.  In fact, it appears that she ignored them since his RFC contains absolutely no mental limitations at all (Tr. 17).  Throughout the case, Mr. Ellis treated at Horizons and Lake Shore Behavioral Health (Tr. 307-343, 445-494, 584-607).  Dr. Redhead consistently diagnosed him with depression as argued above."  (Dkt. No. 13-1 at 14.)  The Commissioner responds that "plaintiff admitted in December 2016 that his medication helped alleviate his depressive symptoms."  (Dkt. No. 14-1 at 17.)  The Commissioner also cites to plaintiff's ability to conduct activities of daily living.  (*Id.*)  "In short, the ALJ reasonably found, based on the forgoing evidence, that plaintiff did not have any mental limitations that precluded unskilled work."  (*Id.*)

The Commissioner has the better argument.  The ALJ emphasized that the opinion of Dr. Santarpia received "significant weight."  As noted above, Dr. Santarpia's psychiatric examination included a medical source statement that, in effect, had no psychiatric limitations.  By stating that plaintiff could understand simple directions; perform simple and complex tasks independently; learn new tasks; maintain attention and concentration; make appropriate decisions; relate adequately with others; and appropriately deal with stress within normal limits, Dr. Santarpia addressed all the areas of cognitive functioning that could warrant a non-exertional limitation in an RFC.  *Cf. DiMartino v. Astrue*, No. 07-CV-0396, 2009 WL 1652167, at *4 (W.D.N.Y. June 10, 2009) (Commissioner affirmed where plaintiff could perform complex tasks independently, make appropriate decisions, and relate adequately with others).  Put another way, if plaintiff can follow instructions learn and perform complex tasks independently, and work with others within normal stress limits then there would appear to be no limitations to include in an RFC.  Substantial evidence thus supports the ALJ's decision not to put any non-exertional limitations in the RFC that would pertain to cognitive functioning.

III.    **CONCLUSION**

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 14) and denies plaintiff's cross-motion (Dkt. No. 13).

The Clerk of the Court is directed to close the case.

SO ORDERED.

__/s Hugh B. Scott_____

Hon. Hugh B. Scott
United States Magistrate Judge

DATED: May 27, 2020

13